**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JERICA MOORE-JONES, Individually
and as Parent and Next Friend of DEL MOORE                          PLAINTIFF

v.                              No. 4:16CV00523 JLH

COLONEL BILL BRYANT, Director, Arkansas
State Police; and ANTHONY TODD QUICK,
Trooper, Arkansas State Police                                      DEFENDANTS

**OPINION AND ORDER**

Jerica Moore-Jones commenced this action on her own behalf and on behalf of her minor daughter against Colonel Bill Bryant, in his official capacity as Director of the Arkansas State Police, and Anthony Todd Quick, individually and in his official capacity as a trooper for the Arkansas State Police. Moore-Jones alleges that Bryant inadequately supervised and trained troopers and that Quick used excessive force in violation of the United States and Arkansas constitutions. The amended complaint alleges a claim under 42 U.S.C. § 1983 for use of excessive force in violation of the due process clause of the fourteenth amendment; a claim under the Arkansas Civil Rights Act[1] and Article 2, § 9 of the Arkansas Constitution for use of excessive force; and a common-law claim for assault and battery. Moore-Jones seeks compensatory and punitive damages.

The defendants have moved to dismiss the amended complaint arguing that: (1) sovereign immunity shields Bryant and Quick in their official capacity; (2) the section 1983 claim fails because Quick, in his individual capacity, is entitled to qualified immunity; and (3) the state-law claims fail because Quick, in his individual capacity, did not lose his statutory immunity by acting maliciously.

---

[1] Moore-Jones's amended complaint cites Ark. Code Ann. § 16-62-102, which is the Arkansas Wrongful Death statute. The amended complaint does not, however, allege a death. The substance of the complaint makes evident that she intends to allege a claim under the Arkansas Civil Rights Act, Ark. Code. Ann. § 16-123-105. The citation to section 16-62-102 appears to be a scrivener's error.

For the reasons explained below, the defendants' motion is granted in part and denied in part. Document #10.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). The court must accept as true all of the factual allegations contained in the complaint and must draw all reasonable inferences in favor of the nonmoving party. *Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must contain more than labels, conclusions, or a formulaic recitation of the elements of a cause of action, which means that the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965.

The amended complaint alleges:

13. On November 7, 2015, at 8:24pm, Jerica Moore-Jones was the subject of a traffic stop for expired tags and while attempting to find a safe place with adequate lighting to stop her vehicle in response to the lights flashing on the ASP cruiser, that as she reduced her speed, the defendant Trooper Quick rammed his police cruiser (in a "pit" maneuver)[2] into her vehicle and caused it to crash causing property damage and personal injury as herein after [sic] alleged.

---

[2] "A 'PIT maneuver' is a method used by police to force a pursued vehicle to abruptly turn sideways to the direction of travel, by bumping the back side of the pursued vehicle with the police vehicle, causing the fleeing driver to lose control and stop." *United States v. Bazaldua*, 506 F.3d 671, 673 n.2 (8th Cir. 2007) (citation omitted).

      14.    At all times before the crash caused by Trooper Quick, Trooper Quick was aware that plaintiff, Jerica Moore-Jones, was attempting to find a safe lighted place to stop and despite that knowledge and within 52 seconds of initiating the traffic stop, chose to ram her vehicle and cause it to crash demonstrating extreme indifference for the health and safety of Jerica Moore-Jones and her daughter, Dela.

Document #8 at 5-6.

      As noted, Moore-Jones sued Bryant in his official capacity for inadequately training and supervising Arkansas State Troopers and Quick in his official and individual capacities for violating her rights under the United States and Arkansas constitutions. Moore-Jones now concedes that her official-capacity claim against Bryant should be dismissed. Document #11. She does not agree, however, that her claims against Quick in his official and individual capacities should be dismissed.

      Monetary claims against a state employee in his official capacity are barred by the Eleventh Amendment. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). Moore-Jones seeks only monetary relief. Her claims against Bryant and Quick in their official capacity, therefore, must be dismissed.

      Whether Quick is immune from suit in his individual capacity, however, presents a different issue. With respect to the federal claims, Quick claims qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)). Qualified immunity provides immunity from suit, not just immunity from liability. *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007). A government official is entitled to qualified immunity if (1) the facts alleged do not amount to violation of a constitutional right, or (2) the constitutional right was not clearly established at the time of the alleged violation. *Pearson*, 555

U.S. at 232, 129 S. Ct. at 815-16. This Court has discretion to address either of these inquiries first. *Id.* at 236, 129 S. Ct. at 818.

Moore-Jones alleges that Quick violated section 1983 by using excessive force to effectuate the traffic stop. Quick's decision to ram Moore-Jones's vehicle off the road constituted a "seizure" under the fourth amendment. *See Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596-97, 109 S. Ct. 1378, 1381, 103 L. Ed. 2d 628 (1989) ("[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement *through means intentionally applied*."). A claim that excessive force was used in seizing a person is analyzed under the fourth amendment's objective reasonableness requirement. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). Although it is clear that an unreasonable use of force is unconstitutional, it is not always apparent what constitutes an unreasonable use of force. That determination demands a "careful balancing" of the individual's liberty interests against the government's countervailing interests. *Id.* at 396, 109 S. Ct. at 1871 (citation omitted). This balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*, 109 S. Ct. at 1872. Additionally, an officer's use of force is not assessed based on hindsight but must be reasonable as judged from the vantage of a reasonable officer on the scene. *Id.*

Quick argues that his decision to use the PIT maneuver was objectively reasonable. Document #10 at 9. In addressing uses of force, courts routinely begin the analysis with the factors set forth in *Graham*: the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to flee.

4

*See, e.g.*, *Montoya v. City of Flandreau*, 669 F.3d 867, 871 (8th Cir. 2012); *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009); *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). Application of these factors produces the following principle: the use of force is least justified against nonviolent misdemeanants who pose little or no threat to the safety of officers or others and who do not actively resist arrest or flee. *Montoya*, 669 F.3d at 871. Notwithstanding, courts are mindful that the totality of the circumstances must be considered. *Id.*

Here, Quick initiated a traffic stop because Moore-Jones was driving with expired tags, a nonviolent misdemeanor offense. *See* Ark. Code Ann. § 27-14-304. Moore-Jones was not operating her vehicle in a reckless or dangerous manner, nor was she threatening the safety of Quick or others. She slowed her vehicle and began searching for a safe place to pull over. After less than one minute of pursuit, Quick decided to use the PIT maneuver to stop her vehicle forcibly. Assuming as true the facts alleged in the complaint, a reasonable officer in Quick's position would not interpret Moore-Jones's conduct as actively resisting arrest or fleeing. *Cf. Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (concluding that officer could reasonably suspect that driver was fleeing after driver drove erratically and dangerously for many miles on a public highway and ignored the flashing lights and wailing siren of officer's car).

Quick contends that the amount of force he used did not present "a unique risk of unjustified harm" and, thus, cannot be considered unreasonable. Document #10 at 9. If so, it is only because Moore-Jones was moving slowly, which gives rise to the issue of whether any amount of force was needed. In a case involving an officer's use of a PIT maneuver to stop a motorist driving at a high rate of speed, the Supreme Court stated that such a maneuver "posed a high likelihood of serious injury or death to respondent." *Scott*, 550 U.S. at 384, 127 S. Ct. at 1778. Although the force employed need not be the most reasonable option, the availability of alternatives can undermine the

reasonableness of a chosen course of conduct. For example, instead of immediately resorting to the PIT maneuver, Quick could have activated his siren if he believed that Moore-Jones could have safely pulled over sooner. *See Stutte v. State*, 2014 Ark. App. 139, 1-2, 432 S.W.3d 661, 663. Or, he could have shined his spot light into the rear view mirror of the car. *See id.* Under these circumstances, Quick's decision to employ a potentially deadly use of force to seize Moore-Jones was not objectively reasonable. *Cf. Sharp v. Fisher*, 532 F.3d 1180, 1184 (11th Cir. 2008) (holding that law enforcement reasonably used PIT maneuver when driver failed to respond to blue lights and sirens, driver gave no indication of stopping the pursuit or slowing down, driver was driving erratically, and there were several civilian vehicles on the Interstate during the pursuit). Therefore, assuming as true the facts alleged by Moore-Jones in the complaint, Quick used excessive force.

Quick is nevertheless entitled to qualified immunity if he did not have fair warning that his conduct violated the fourth amendment. *See Brown*, 574 F.3d at 499. Quick argues that "[t]he current state of the law would not have informed [him] that striking a suspect's vehicle with an officer's vehicle is *per se* excessive." Document #10 at 8. Pointing this Court to cases involving the use of PIT maneuvers, Quick contends that it is not clearly established that his conduct constituted excessive force. *Id.* at 7-8.

*Graham* clearly established the general proposition that excessive force violates the fourth amendment. But before an officer will be denied qualified immunity, his conduct must be shown to violate a right that is "'clearly established' in a more particularized, and hence more relevant, sense." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). This is not to say that an officer is entitled to qualified immunity whenever precedent squarely addressing the factual scenario is lacking. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516, 153 L. Ed. 2d 666 (2002) (affirming "that officials can still be on notice that their conduct violates

6

established law even in novel factual circumstances" and "fundamentally" or "materially" similar facts are sufficient but not required). Recognizing the sometimes "hazy border between excessive and acceptable force," the Supreme Court has instead emphasized the importance of officers having notice that their conduct is unlawful. *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

Quick acknowledges that the cited cases in which PIT maneuvers were used all "involved longer and more dramatic pursuits" that "justified the greater force used." Document #10 at 9. What is more, these dramatic pursuits all involved drivers fleeing law enforcement, resulting in dangerous high-speed chases. *See Scott*, 550 U.S. at 374-75, 127 S. Ct. at 1772-73 (high-speed chase of up to 85 mph covering a distance of nearly 10 miles); *Sharp*, 532 F.3d at 1182 (high-speed chase covering a distance of at least 20 miles); *Helseth v. Burch*, 258 F.3d 867, 869 (8th Cir. 2001) (high-speed chase of up to 111 mph lasting over six minutes); *Davis v. Twp. of Hillside*, 190 F.3d 167, 169 (3d Cir. 1999) (high-speed chase of up to 70 mph). Quick relies on these cases to show that the current state of the law would not have informed him that PIT maneuvers are "*per se* excessive." Document #10 at 8. That is true, of course, but beside the point. That a PIT maneuver can be used in certain circumstances says nothing about whether it reasonably should have been used here. Tellingly, this Court could find no reported cases where a driver had slowed down in response to law enforcement and traveled such a short distance before the PIT maneuver was used. A lack of cases does not demonstrate that a right was clearly established, but it does indicate that the particular use of force is not commonly employed by other officers. That force is rarely or never used in a particular circumstance might indicate that the use of force in that circumstance is unreasonable.

While no cases directly on point have been cited by the parties or found by the Court, analysis does not stop for that reason alone. At the time of the alleged misconduct, the Eighth

7

Circuit had established that force is least justified against nonviolent misdemeanants who pose little or no threat to the safety of officers or others and who do not actively resist arrest or flee. *Montoya*, 669 F.3d at 871; *Brown*, 574 F.3d at 499. The Eighth Circuit had applied this principle in the context of use of a "leg sweep," *Montoya*, 669 F.3d at 871, tasering, *Brown*, 574 F.3d at 499, and subduing an arrestee. *Shannon v. Koehler*, 616 F.3d 855, 863 (8th Cir. 2010). When confronted with a nonviolent misdemeanant who poses no immediate danger to officers or others and who is not actively resisting arrest or fleeing, no more than de minimis force is justified. *Id.* This was clearly established law when Quick used the PIT maneuver against Moore-Jones.

Accepting Moore-Jones's version as true, she had violated a misdemeanor traffic offense, posed no danger to Quick or others, and was not actively resisting arrest or fleeing. On these facts, Quick is not entitled to qualified immunity.

Quick is also not entitled to statutory immunity under Ark. Code Ann. § 19-10-305(a) on Moore-Jones's state-law claims. Arkansas employees are immune from liability and from suit except for "malicious acts or omissions." Ark. Code Ann. § 19-10-305(a). Moore-Jones has not alleged facts sufficient to dispel his statutory immunity, Quick maintains, because she has not shown "that Quick executed a PIT maneuver for no good purpose and that he intended to harm Moore-Jones and her daughter." Document #10 at 5. Moore-Jones need not meet such a burden. The Supreme Court of Arkansas has defined malicious acts or omissions to include those acts carried out "with reckless disregard of the rights of another as to constitute the equivalent of ill will." *Bland v. Verser*, 299 Ark. 490, 494, 774 S.W.2d 124, 126 (1989). It is reasonable to infer that Quick acted "maliciously"—with at least "reckless disregard"—by ramming Moore-Jones's vehicle off the road. Moreover, Arkansas courts have analyzed immunity under Ark. Code Ann. § 19-10-305(a) using qualified immunity standards provided under federal law. *See Baldridge v. Cordes*, 350 Ark. 114,

119, 85 S.W.3d 511, 514 (2002) ("As applied by this court, the doctrine of qualified immunity is akin to its federal counterpart."). Given this treatment of Arkansas statutory immunity and this Court's conclusion above, Quick is also not shielded by statutory immunity under Ark. Code Ann. § 19-10-305(a).

## CONCLUSION

The defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Document #9. Jerica Moore-Jones's claims against Colonel Bill Bryant and Anthony Todd Quick in their official capacity are dismissed with prejudice. Her claims against Quick in his individual capacity are not dismissed.

IT IS SO ORDERED this 30th day of August, 2016.

*J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE