# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JERICA MOORE-JONES, Individually                                                     PLAINTIFF
and as Parent and Next Friend of DEL MOORE

v.                                     No. 4:16CV00523 JLH

ANTHONY TODD QUICK,
Trooper, Arkansas State Police                                                        DEFENDANT

## OPINION AND ORDER

Jerica Moore-Jones commenced this action on her own behalf and on behalf of her minor daughter against Colonel Bill Bryant, in his official capacity as Director of the Arkansas State Police; and Anthony Todd Quick, individually and in his official capacity as a trooper for the Arkansas State Police. The Court previously dismissed the claims against Bryant and the claims against Quick in his official capacity. Moore-Jones's remaining claims against Quick allege excessive force in violation of the United States and Arkansas constitutions and assault and battery. Quick now moves for summary judgment. For the reasons explained below, Quick's motion is denied.

Quick argues that he is entitled to qualified and statutory immunity and that assault and battery may not be maintained against a police officer attempting to make an arrest. Specifically, Quick argues that use of the PIT maneuver was not an excessive use of force. Document #22 at 3. He alternatively argues that even if it were excessive, the law at the time was not clearly established that such force was constitutionally unreasonable. *Id.* at 11. The Court previously held that the law at the time clearly established that a PIT maneuver used against nonviolent misdemeanants who pose little or no threat to the safety of officers or others and who do not actively resist arrest or flee

constitutes excessive force. Nothing has changed the Court's understanding of the maneuver or the law.

What has changed from the Court's previous order is the introduction of Quick's dash-camera recording, his affidavit, and other record evidence. In the motion to dismiss, the Court accepted as true the allegations in Moore-Jones's complaint. On summary judgment, the Court must view the record as a whole. A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id.*

On the evening of November 7, 2015, Moore-Jones was driving in a white Dodge Challenger west on the Interstate 30 service road. Document #23 at ¶1. As she passed Quick, who was parked on the right shoulder in a fully marked state police car, Quick ran her license plate number. *Id.* ¶¶2-3. Quick learned that her car registration was expired and pulled onto the road to initiate a traffic stop. Document #23-1 at ¶3. Quick's car had a dash-camera that recorded the ensuing events. Document #23-12. The footage begins at 8:22:28 p.m., with Quick's car on the road. *Id.* He accelerates to catch up to Moore-Jones, at times reaching speeds of 84 miles per hour. *Id.* Quick is soon behind Moore-Jones and turns his lights on at 8:23:27 p.m. *Id.* He activates his sirens at 8:23:35 p.m., and he shines his spotlight on the car at 8:23:38 p.m. *Id.*

At 8:23:41 p.m., Moore-Jones slows her speed and goes around a car that is pulled off on the right shoulder. *Id.* Once around the car, she begins to pull her car to the shoulder but then pulls back onto the road. *Id.* The shoulder is narrow—much less than a car-width—and quickly falls off into a ditch. *Id.* The area is also unlit and dark. *Id.* When Moore-Jones pulls back onto the road, she increases her speed from 14 miles per hour to 35 miles per hour. *Id.* She continues to drive at speeds between 35 and 38 miles per hour. *Id.* The posted speed limit is 55 miles per hour. *Id.* The stretch of road remains unlit with a narrow shoulder. *Id.*

At 8:24:16 p.m., she passes the exit for Raymar Road on her right but does not stop. *Id.* At 8:24:18 p.m., Quick accelerates and uses the Raymar exit to position his front, left bumper alongside of the right, rear fender of Moore-Jones's car. *Id.* He then strikes her fender with his bumper, causing her car to spin clockwise into the ditch. *Id.* This is referred to as a "PIT maneuver."[1]

---

[1] PIT stands for precision immobilization technique. It "is a method used by police to force a pursued vehicle to abruptly turn sideways to the direction of travel, by bumping the back side of the pursued vehicle with the police vehicle, causing the fleeing driver to lose control and stop."

Moore-Jones's car comes to rest after running headlong into a cement culvert. Document #23 at ¶21. Moore-Jones was cited for expired vehicle tags and failure to yield to an emergency vehicle. Document #23-1 at ¶15.

Quick testified in his affidavit that he believed Moore-Jones was fleeing. *Id.* ¶6. He came to this conclusion, he says, because of what he describes as excessive activity among the occupants and Moore-Jones's failure to yield. *Id.* Quick says he used the PIT maneuver when he did because he feared a high-speed chase could have ensued and he knew that a more-populated area was approaching. *Id.* ¶¶7-12. Quick testified in his deposition that Moore-Jones was never speeding, that he did not observe any unsafe driving by Moore-Jones, and that Moore-Jones posed no danger to himself or others at the time he decided to use the PIT maneuver. Document #23-1 at 13-14.

Lieutenant Darran Austin, one of Quick's superiors, testified that he believed "the PIT maneuver was issued very quickly" and that he "would have waited longer" before using the maneuver. *Id.* at 46. Austin also counseled Quick to "be mindful of the people that may not feel safe to stop in that location and may be moving to what they feel is a safer location." Document #26-1. Major John Michael Foster testified that a PIT maneuver should be used to reduce risk. Document #23-1 at 60.

Moore-Jones alleges that Quick used excessive force in violation of the fourth amendment to effectuate the traffic stop. Quick does not dispute that his decision to force Moore-Jones's vehicle off the road constituted a "seizure" under the fourth amendment. *See Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-597, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989) ("[A] Fourth Amendment seizure [occurs] . . . when

---

*United States v. Bazaldua*, 506 F.3d 671, 673 n.2 (8th Cir. 2007) (citation omitted).

there is a governmental termination of freedom of movement *through means intentionally applied*."). At bottom, Quick's argument is that a reasonable officer would have believed that Moore-Jones was fleeing and that it was reasonable to employ a PIT maneuver against a fleeing motorist.

The excessive force claims against Quick are analyzed under the doctrine of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed.2d 396 (1982)). Qualified immunity provides immunity from suit, not just immunity from liability. *Hayek v. City of St. Paul*, 488 F.3d 1049, 1054 (8th Cir. 2007). A government official is entitled to qualified immunity if (1) the facts, viewed in the light most favorable to the plaintiff, do not amount to violation of a constitutional right, or (2) the constitutional right was not clearly established at the time of the violation. *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). Either inquiry may be addressed first. *Pearson*, 555 U.S. at 236, 129 S. Ct. at 818.

The fourth amendment requires law enforcement's use of force to be objectively reasonable. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989). Unreasonable, or excessive, use of force is unconstitutional, but it is not always apparent what constitutes an unreasonable use of force. This determination demands a "careful balancing" of the individual's liberty interests against the government's countervailing interests. *Id.* at 396, 109 S. Ct. at 1871 (citation omitted). Courts must pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or

5

attempting to evade arrest by flight." *Id.*, 109 S. Ct. at 1872. Importantly, the above analysis is judged from the vantage of a reasonable officer on the scene—not hindsight nor the particular beliefs of Quick or Moore-Jones. *Id.*

As explained in the Court's previous order, courts routinely begin excessive-force analysis with the factors set forth in *Graham*: severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to flee. *See, e.g.*, *Montoya v. City of Flandreau*, 669 F.3d 867, 871 (8th Cir. 2012); *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009); *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). Application of these factors produces the following principle: the use of force is least justified against nonviolent misdemeanants who pose little or no threat to the safety of officers or others and who do not actively resist arrest or flee. *Montoya*, 669 F.3d at 871. Notwithstanding, courts are mindful that the totality of the circumstances must be considered. *Id.*

Quick initiated a traffic stop because Moore-Jones was driving with expired tags, a nonviolent misdemeanor offense. *See* Ark. Code Ann. § 27-14-304. He says that the PIT maneuver was warranted because Moore-Jones was fleeing. He agrees that absent his conclusion that Moore-Jones was fleeing, it would have been unreasonable to use a PIT maneuver to effectuate a traffic stop for expired tags. After reviewing the evidence in the light most favorable to Moore-Jones and drawing all reasonable inferences in her favor, the Court cannot say as a matter of law that a reasonable officer on the scene would have concluded that Moore-Jones was fleeing. *Cf. Sharp v. Fisher*, 532 F.3d 1180, 1184 (11th Cir. 2008) (holding that law enforcement reasonably used PIT maneuver when driver failed to respond to blue lights and sirens, driver gave no indication of stopping the pursuit or slowing down, driver was driving erratically, and there were several civilian

vehicles on the Interstate during the pursuit); *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006) (concluding that officer could reasonably suspect that the driver was fleeing after driver drove erratically and dangerously for many miles on a public highway and ignored the flashing lights and wailing siren of officer's car).

A few things lead to this conclusion. Quick acknowledges that Moore-Jones was not operating her vehicle in a reckless or dangerous manner that threatened his safety or the safety of others. Major Foster testified that a fleeing vehicle typically takes evasive action. Document #23-1 at 62. The dash-camera recording shows that Moore-Jones slowed her vehicle to a speed significantly below the posted speed limit. Moore-Jones did begin to pull her car to the side of the road before pulling back onto the roadway. Quick says he interpreted this as evidence that she was fleeing. But Moore-Jones did not accelerate quickly as if to flee; instead, she maintained a speed under 38 miles per hour on a road with a posted speed limit of 55 miles per hour. These are not the actions of a fleeing motorist.

Lieutenant Austin's counseling also supports this conclusion. Quick was reminded to be aware of drivers that may not feel safe stopping in a particular location and that are moving to a safer stopping point. Moore-Jones says she was doing just that. The stretch of road where Quick initiated the traffic stop was unlit and had a narrow shoulder. A reasonable officer would be "mindful," as Austin put it, of this concern.

The time elapsed and the distance traveled also cast Quick's conclusion into doubt. Quick pursued Moore-Jones for 51 seconds before he employed the PIT maneuver. In that time, Moore-Jones traveled roughly one-half mile. Quick relies on *McCoy v. City of Monticello*, 342 F.3d 842 (8th Cir. 2003), to say that it was reasonable to believe that Moore-Jones was fleeing. In *McCoy*,

7

officers pursued a truck that had erratically pulled out of a parking lot for at least one mile before pulling in front of the truck to effectuate a stop. *Id.* at 848. The court said that a reasonable officer could believe both that the driver posed a serious and immediate danger to himself and to others and that the driver was actively fleeing to resist arrest. *Id.* Needless to say, those facts are quite different than the facts here. Nothing occurred to make it reasonable for Quick to believe that Moore-Jones posed an immediate danger to others, and Moore-Jones traveled only half the distance as the driver in *McCoy* before Quick made the stop.

The Court is, therefore, unable to say as a matter of law that Quick's use of force was objectively reasonable. The Court previously held, and continues to hold, that the law placed Quick on clear notice that only *de minimis* force may be used against nonviolent misdemeanants who pose no immediate danger to officers or others and who are not actively resisting arrest or fleeing.

With respect to Moore-Jones's state law claims, Quick continues to argue that he is entitled to statutory immunity under Ark. Code Ann. § 19-10-305(a). The Court's analysis of this issue remains unchanged as to the claims under Arkansas law. *See Baldridge v. Cordes*, 350 Ark. 114, 119, 85 S.W.3d 511, 514 (2002) ("As applied by this court, the doctrine of qualified immunity is akin to its federal counterpart."). Officers are not immune from intentional tort claims under section 19-10-305. *Grine v. Bd. of Trs.*, 2 S.W.3d 54, 89 (Ark. 1999). The common law claims for assault and battery survive summary judgment because a genuine dispute exists as to whether Quick used excessive force to stop Moore-Jones. Under Arkansas law, an officer has a defense against a claim for assault or battery if the officer, while performing his official duty, used reasonable force. *See Perry v. Woodruff Cnty.*, No. 2:14CV00141-BSM, 2016 WL 9457089 at *5 (E.D. Ark. June 27,

2016) (citing *Crouch v. Richards*, 2012 Ark. 960, 208 S.W.2d 460, 462 (1948)); *see also Martin v. Hallum*, 2010 Ark. App. 193, 13, 374 S.W.3d 152, 160.

## CONCLUSION

The defendant's motion for summary judgment is DENIED. Document #21.

IT IS SO ORDERED this 20th day of December, 2017.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE